UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

JULIUS DANIEL ALEXANDER                    CIVIL ACTION

VERSUS                                     NUMBER: 15-4861

SHERIFF MARLIN N. GUSMAN, ET AL.           SECTION: "R"(5)

## REPORT AND RECOMMENDATION

This 42 U.S.C. §1983 proceeding was filed *in forma pauperis* ("IFP") by *pro se* Plaintiff, Julius Daniel Alexander, against Defendants, Sheriff Marlin N. Gusman, Lieutenant Givens, Captain Ruiz, Assistant Captain Harris, Lieutenant Holmes, and Sergeant Sims of the Orleans Parish Prison ("OPP"). (Rec. doc. 7, pp. 1, 4).

Plaintiff is an inmate of OPP who is being held on a litany of criminal charges, most notably charges of murder and attempted murder. (*See Alexander v. Givens*, No. 15-CV-1201 "N"(3)(§1983 against detective for alleged improper release of information pertaining to his criminal case).[1]  In this civil rights action under §1983, Plaintiff alleges, first, that on April 11, 2015, he and every other inmate on his tier were strip searched "... outside on the yard," an incident that constitutes "ind[e]cent exposure." (Rec. doc. 7, p. 6).  Second, Plaintiff complains that throughout the duration of his confinement at OPP he has "... been breathing in manifested mold." (*Id.*).  And third, Plaintiff alleges that during a roughly two-month period in which he was housed on tier B-2, the air conditioning unit on that tier blew no cold air at all, resulting in him being moved to tier B-1 and, ultimately, to a different jail facility. (*Id.*).  Plaintiff indicates that he has sued the Sheriff and the named Defendant ranking jail

---

[1] In answer to question No. I(A) of the standardized §1983 complaint form that he completed in this case, Plaintiff failed to report the existence of this previous lawsuit.  (Rec. doc. 7, pp. 1-2).

officials because they "... were on the clock & they are also supervisors of Orleans Parish Prison." (*Id.* at p. 6). Plaintiff requests an unspecified amount of monetary damages to compensate him for his suffering. (*Id.* at p. 5).

Plaintiff has instituted this suit IFP pursuant to 28 U.S.C. §1915. A proceeding brought IFP may be dismissed as frivolous under §1915(e)(2)(B)(i) if the claim alleged therein has no arguable basis in law or fact, *Booker v. Koonce*, 2 F.3d 114 (5th Cir. 1993), or if it fails to state a claim upon which relief can be granted. 28 U.S.C. §1915(e)(2)(B)(ii); *see also* 28 U.S.C. §1915A(b), 42 U.S.C. §1997e(c). Giving the instant complaint a liberal reading, it is the recommendation of the undersigned Magistrate Judge that this matter be dismissed as frivolous and for failing to state a claim upon which relief can be granted.

As noted above, the named Defendants in this proceeding are the Sheriff and five ranking jail officials in the Sheriff's employ. In his statement of claim, Plaintiff sets forth no facts demonstrating any personal involvement on the part of the Defendants in the matters complained of; rather, he appears to have named the six individuals as Defendants simply because of the supervisory positions that they hold. Such is insufficient to hold the Defendants liable in either capacity in which they may have been sued. "'Plaintiffs suing government officials in their individual capacities . . . must allege specific conduct giving rise to a constitutional violation. This standard requires more than conclusional assertions: The plaintiff must allege specific facts giving rise to the constitutional claims.'" *Carter v. Strain*, No. 09-CV-0015, 2009 WL 3231826 at *1 (E.D. La. Oct. 1, 2009)(quoting *Oliver v. Scott*, 276 F.3d 736, 741 (5th Cir. 2002)). This is so because "'[p]ersonal involvement is an essential element of a civil rights cause of action.'" *Id.* (quoting *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983). Supervisory officials like the Sheriff ". . . cannot be held liable for federal civil

rights violations allegedly committed by his associates based merely on a theory of strict liability or vicarious liability." *Id.* (footnotes omitted). *Respondeat superior* is not a concept that is applicable to proceedings brought under §1983. *Harvey v. Andrist*, 754 F.2d 569, 572 (5th Cir.), *cert. denied*, 471 U.S. 1126, 105 S.Ct. 2659 (1985); *Lozano v. Smith*, 719 F.2d 756, 768, (5th Cir. 1983); *Douthit v. Jones*, 641 F.2d 345, 346 (5th Cir. 1981).

Moreover, "'[i]n a suit brought against a municipal official in his official capacity, the plaintiff must show that the municipality has a policy or custom that caused his injury.'" *Carter*, 2009 WL 3231826 at *2 (quoting *Parm v. Shumate*, 513 F.3d 135, 142 (5th Cir. 2007), *cert. denied*, 555 U.S. 813, 129 S.Ct. 42 (2008)). "'A plaintiff may not infer a policy merely because harm resulted from some interaction with a governmental entity.'" *Id.* (quoting *Colle v. Brazos County, Texas*, 981 F.2d 237, 245 (5th Cir. 1993)). Rather, the plaintiff ". . . must identify the policy or custom which allegedly caused the deprivation of his constitutional rights." *Id.* (citing *Murray v. Town of Mansura*, 76 Fed.Appx. 547, 549 (5th Cir. 2003) and *Treece v. Louisiana*, 74 Fed.Appx. 315, 316 (5th Cir. 2003).

Measured against the foregoing standards, Plaintiff's claims against the named Defendants should be dismissed pursuant to §1915(e)(2)(B) as personal involvement on their part is not alleged and no policy or custom has been identified. Although Plaintiff does attach to his complaint a number of inmate grievance forms that were responded to by two of the named Defendants, those forms, which will be summarized below, fail to establish the required level of personal involvement sufficient to hold them liable here.

On April 17, 2015, Plaintiff completed an inmate grievance form, designated as No. 746610, in which he complained of the April 15, 2015 "shake down" and strip search of the inmates on his tier. (Rec. doc. 7, p. 21). For reasons that are not apparent from the record,

that grievance form was not received and deemed to be grievable by the OPP Warden until July 14, 2015.  (*Id.*).  The following day, the grievance was responded to by Captain Ruiz, who advised Plaintiff that "[t]his matter will be investigated."  (*Id.* at p. 22).

On April 29, 2015, Plaintiff completed a second grievance form, No. 746877, complaining of the strip search of the inmates of his tier, this time identifying March 30, 2015 as the date of the occurrence.  (Rec. doc. 7, pp. 7-8).  On May 5, 2015, that grievance was received by Lieutenant Givens, who formally responded to it on May 21, 2015, having in the interim spoken to Plaintiff about the occurrence as well as Plaintiff's desire to be moved to a jail facility in another parish to avoid any further confrontations with other inmates.  (*Id.* at p. 9).

Plaintiff completed two additional grievance forms on August 7, 2015.  In the first one, No. 749576, Plaintiff complained of mold and scum in the shower area and rust everywhere. (Rec. doc. 7, p. 19).  In the second grievance, No. 749594, he complained of excessive heat on his tier.  (*Id.* at p. 24).  Those grievances were received on the date that they were written by separate OPP officials, who both construed them as requests for service rather than grievances.  (*Id.* at pp. 19, 24).  By the time that Captain Ruiz formally responded to those grievances on August 25, 2015, Plaintiff had been moved to a different tier.  (*Id.* at pp. 20, 23).

As the foregoing documentation submitted by Plaintiff readily illustrates, although Captain Ruiz responded to three of the above-described grievances and Lieutenant Givens addressed the fourth, it was not alleged in any of those forms that either of those two officials had any personal involvement in the strip search incident or with the cleanliness or temperature of the tier where Plaintiff was once housed.  Neither the Sheriff nor the three

other named jail officials were mentioned in or responded to Plaintiff's grievances.  That being the case, there is simply no basis upon which to hold the Defendants liable here.

Even if Plaintiff had alleged the requisite personal involvement on the Defendants' part, the Court's recommendation would be no different.  It is well-settled that a strip search of a prison inmate is not unreasonable *per se* under the Fourth Amendment and such searches need not be predicated upon probable cause.  *Brown v. Brooks*, No. 09-CV-6762, 2010 WL 2772659 at *8 (E.D. La. June 17, 2010), *adopted*, 2010 WL 2773393 (E.D. La. July 12, 2010)(quoting *Graves v. Cain*, No. 09-CV-0705, 2010 WL 2134308 at *4 (M.D. La. Apr. 16, 2010), *adopted*, 2010 WL 2243274 (M.D. La. May 26, 2010).  An inmate's Fourth Amendment protections are greatly limited in the context of prison searches, his rights being diminished by the needs and exigencies of the institution in which he is incarcerated through a balancing test measured against the institution's legitimate penological concerns.  *Moore v. Carwell*, 168 F.3d 234, 236-37 (5th Cir. 1999); *Elliott v. Lynn*, 38 F.3d 188, 190-91 (5th Cir. 1994), *cert. denied*, 514 U.S. 1117, 115 S.Ct. 1976 (1995); *United States v. Lilly*, 576 F.2d 1240 (5th Cir. 1978), *abrogated on other grounds by Hudson v. Palmer*, 468 U.S. 517, 522-23, 104 S.Ct. 3194, 3198 (1984).  The Fourth Amendment requires only that searches of prisoners be reasonable under all of the facts and circumstances in which they are performed, requiring a balancing of the need for the particular search against the invasion of personal rights that the search entails.  *Bell v. Wolfish*, 441 U.S. 520, 559, 99 S.Ct. 1861, 1884 (1979).  The burden of proving the reasonableness of a search is a light one because a jail administrator's decisions and actions in the prison context are entitled to great deference.  *Elliott*, 38 F.3d at 191; *Lilly*, 576 F.2d at 1245.

Admittedly, the facts presented by Plaintiff surrounding the search in question are somewhat sparse.  However, he does state that the search was performed on all of the inmates on his tier rather than him alone, thus acknowledging that he was not singled out for the procedure.  Plaintiff does not allege that any physical contact occurred during the course of the search which thus appears to have been only visual in nature.  There is also no allegation that the procedure was conducted in the presence of female guards and while Plaintiff characterizes the search as "ind[e]cent exposure," he does not specifically allege that he was susceptible to being viewed by anyone other than the officials who performed the search.  Deferring to the wisdom of jail officials in the operation of OPP, the Court is unable to say that the search was unreasonable and thus violative of the Fourth Amendment.  Even if it were, as Plaintiff has alleged no injury resulting from the alleged Fourth Amendment violation but seeks only compensatory damages for his "suffering," his request for such relief "… precludes recovery and warrants dismissal of his complaint." *Berry v. Madison Parish*, No. 10-CV-0554, 2010 WL 3704889 at *4 (W.D. La. Aug. 18, 2010), *adopted*, 2010 WL 3705226 (W.D. La. Sept. 13, 2010)(citing *Hutchins v. McDaniels*, 512 F.3d 193 (5th Cir. 2007)).

In addition to the strip search, Plaintiff complains of "… breathing in manifested mold" with nothing being done about it.  Here, again, Plaintiff does not allege that he suffered any injuries or ill-effects as a result of the alleged ventilation inadequacies and his conclusory allegations in that regard thus implicate no constitutional right.  *Rue v. Gusman*, No. 09-CV-6480, 2010 WL 1930936 at *5 (E.D. La. May 11, 2010)(and cases cited therein).  "[A]lthough prisons should be reasonably clean, '[t]he Constitution does not require that prisons be completely sanitized or as clean or free from potential hazards as one's home might be.'" *Russell v. Pittman*, No. 14-CV-2204, 2015 WL 4478054 at *2 (E.D. La. July 22, 2015)(quoting

6

*McAllister v. Strain*, No. 09-CV-2823, 2009 WL 5178316 at *3 (E.D. La. Dec. 23, 2009)).  That being the case, the mere presence of rust, mold, or other similar conditions, while possibly unpleasant and uncomfortable, does not establish a constitutional violation.  *Id.*; *Billizone v. Jefferson Parish Corr. Center*, No. 14-CV-1263, 2015 WL 1897683 at *3-4 (E.D. La. Apr. 27, 2015).

Finally, Plaintiff alleges that during the roughly two-month period that he was housed on B-2, the air conditioning unit on the tier produced no cold air.  The fact that temperatures are uncomfortable, standing alone, does not point to a constitutional violation.  *Ventry v. Gusman*, No. 11-CV-2989, 2012 WL 1405862 at *6-7 (E.D. La. March 29, 2012), *adopted*, 2012 WL 1398626 (E.D. La. Apr. 20, 2012).  While exposure to <u>extreme</u> heat is actionable in some circumstances, because Plaintiff does not allege that he suffered from any heat-related injuries despite being subjected to intemperate conditions for a limited period of time, no constitutional violation is apparent.  *Id.* (quoting *Johnson v. Texas Board of Criminal Justice*, 281 Fed.Appx. 319, 320 (5th Cir. 2008)).

## **RECOMMENDATION**

For the foregoing reasons, it is recommended that Plaintiff's suit be dismissed with prejudice pursuant to 28 U.S.C. §1919(e)(2)(B)(i) and (ii).

A party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in a magistrate judge's report and recommendation within 14 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such

consequences will result from a failure to object. *Douglass v. United States Auto. Assoc.*, 79

F.3d 1415 (5th Cir. 1996)(en banc).

New Orleans, Louisiana, this ___16th___ day of _____November_____, 2015.

_____
MICHAEL B. NORTH
UNITED STATES MAGISTRATE JUDGE